UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHRISTOPHER BLAKE,

   Plaintiff,

  v.

JOLIET TOWNSHIP HIGH SCHOOL
DISTRICT 204,

   Defendant.

No. 15 CV 11624

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

  Christopher Blake alleges that Joliet Township High School District 204 failed to hire him as a substitute teacher and discriminated against him on the basis of his race, sex, and age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981. District 204 moves for summary judgment on all claims against it. For the following reasons, defendant's motion is granted.

**I.  Legal Standards**

  Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Justifiable inferences are drawn in the nonmovant's favor, *id.* at 255, and the party seeking

summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Background

Blake is representing himself in this lawsuit. Courts liberally construe a pro se plaintiff's pleadings in order "to give a *pro se* plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise understandable." *Greer v. Board of Educ. of City of Chicago, Ill.*, 267 F.3d 723, 727 (7th Cir. 2001). But pro se plaintiffs must attempt to comply with Local Rule 56.1, which requires the non-moving party to identify material facts establishing a genuine dispute for trial and to admit or deny each factual statement offered by the defendant (citing to controverting evidence when facts are denied). *Id*. Blake did not file his three-page response with the Clerk of Court, but instead sent it to District 204.[1] Although Blake was supplied with the Local Rule 56.2 notice to pro se litigants opposing summary judgment, he did not make any effort to respond to the school district's factual statements. Under Local Rule 56.1, Blake admits these facts through his failure to respond. Blake also did not cite any evidence in support of his own arguments. "Employment cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id*. (marks omitted). Local Rule 56.1 allows me to grant summary judgment for District 204 on the basis of Blake's failure to comply

---

[1] District 204 attached Blake's response to its reply brief. *See* [27] at 11–14. Bracketed numbers refer to entries on the district court docket.

with local rules, *id.*, but instead of taking that drastic step, I view District 204's admitted facts in the light most favorable to Blake.

From around 1993 until October 2008, Christopher Blake was intermittently employed as a substitute teacher at Joliet Township High School District 204. [24] ¶¶ 2, 14–15. Blake worked in other school districts, and in 2007 he was teaching at a high school in the Chicago Public School (CPS) system. [24] ¶¶ 17, 29. While there, Blake was investigated for physically abusing students in February 2007. [24] ¶ 30. A CPS investigation concluded that there was credible evidence that, while coaching basketball practice for freshmen girls, Blake hit three students after one refused to pass him the basketball. According to the report, Blake struck two of the students with a plastic garbage can lid and struck another student on the side of her face with his closed fist. [24] ¶¶ 31–36. Blake received a copy of the report but did not submit a written challenge to its findings. [24] ¶ 37. During the investigation, Blake was arrested and charged with three counts of battery, although the charges were ultimately dropped. He was removed from his teaching position and was placed at a CPS attendance center, where he received his salary but performed no work. [24] ¶¶ 38–40.

Between September 12, 2008 and October 9, 2008, Joliet Township High School District 204 employed Blake as a substitute teacher on three occasions. [24] ¶ 41. On his September 12, 2008 substitute teacher application, Blake had disclosed "CPS 06/07 alleged student altercation" in response to the question: "Have you ever failed to be rehired, asked to resign a position, or resigned to avoid termination?"

3

[24] ¶ 43. A few weeks later in October 2008, Richard Pagliaro—then an assistant superintendent at District 204—learned that Blake had been involved in a physical altercation with female students at the CPS high school and that the Will County Regional Office of Education was not placing Blake on its list of authorized substitute teachers. [24] ¶¶ 42, 44. Under Illinois law, all individuals seeking a substitute position in Illinois schools are required to register with the Regional Office of Education and qualify for a substitute teacher authorization in the county where they wish to teach; authorization involves a fingerprint-based background investigation, among other requirements. *See* 105 ILCS 5/10-21.9; 105 ILCS 5/21B-20(3); 23 Ill. Adm. Code tit. 23, § 1.790. District 204 only hires substitute teachers from the county's authorized list. [24] ¶ 20.

Pagliaro advised the District 204 employee charged with scheduling substitute teachers that Blake should not be assigned as a substitute because he was not on the county's authorized list and because of the reported physical altercation with CPS students. [24] ¶ 45. In November 2008, Blake filed a charge of race discrimination with the EEOC against District 204, alleging that he was discharged from the school because he was black, but he did not file suit after receiving his right-to-sue letter from the EEOC. [24] ¶¶ 10, 12. Pagliaro's successor, Ilandus Hampton, also instructed the scheduling employee to not assign Blake as a substitute due to concerns over his past conduct. [24] ¶¶ 47, 54. Blake again disclosed the 2007 incident in his 2011 application to substitute at District 204. [24] ¶ 51. District 204 has not used Blake as a substitute teacher since 2008, although

he has applied for substitute teaching positions at District 204 every subsequent school year through the 2014–2015 school year and although in 2011 he was once again placed on the county's authorized list of substitute teachers. [24] ¶¶ 16, 45–46, 52–54.

In August 2015, Blake filed a charge of discrimination with the EEOC, alleging that he began his employment with District 204 in August 2014 as a substitute teacher but was advised that no assignments were available. [24] ¶¶ 5–6. He alleged discrimination on the basis of race, sex, and age (Blake is over 40). He received his EEOC letter on September 28, 2015. [24] ¶¶ 6–7. On December 23, 2015, Blake filed a pro se complaint bringing claims for race, sex, and age discrimination, alleging that District 204 failed to hire him, terminated him, and retaliated against him. [1]. District 204 moved to dismiss Blake's age discrimination and retaliation claims, but only the retaliation claim was dismissed (without prejudice) because there was nothing in Blake's EEOC charge to suggest that retaliation was within the scope of the conduct complained of. [16]. District 204 now moves for summary judgment on all claims.

### III. Analysis

#### A. Limited Scope of the EEOC Charge

To maintain a successful claim under Title VII or the ADEA, a plaintiff must file a charge with the EEOC within the time period allotted by statute and the EEOC must issue a right-to-sue letter. *Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "[T]he scope of the subsequent judicial proceedings is limited by the nature of

the charges filed with the EEOC." *Rush*, 966 F.2d at 1110. The EEOC charge supporting Blake's complaint was filed in August 2015, and although very brief, states that basis for his discrimination claims are that he began employment with District 204 in or about August 2014 as substitute teacher but was advised that no positions were available. [1] at 8. In Illinois, a plaintiff alleging ADEA or Title VII violations must file charges with the EEOC within 300 days of the alleged discriminatory employment practice. *See* 29 U.S.C. § 626(d)(1); 42 U.S.C. § 2000e–5(e)(1). Under the notice rule, the 300–day limitations period begins to run when the employee knows he has been injured, not when he determines that the injury was unlawful. *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 240 (7th Cir. 2004).

District 204 argues that Blake's complaint is limited to the 2014 to 2015 school year, as alleged in his EEOC charge. Blake responds that the school district's discrimination was one continuing violation from 2008 to 2015. The continuing violation theory extends the statute of limitations in some cases, for example where an employer's discrimination is covert and the character of discriminatory acts was not apparent at the time they occurred. *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 445–46 (7th Cir. 1994). The problem for Blake is that he was sufficiently aware of District 204's alleged racial discrimination in November 2008, when he filed the EEOC charge alleging that the school district discharged him after a background check. [24] ¶ 10; [24-1] at 16. "If it is only with the benefit of hindsight, after a series of discriminatory acts, that the plaintiff can realize that he is indeed a victim

6

of unlawful discrimination, he can sue in regard to all of the acts provided he sues promptly after learning their character," but if "he knows or with the exercise of reasonable diligence would have known after each act that it was discriminatory and had harmed him, he may not sit back and accumulate all the discriminatory acts and sue on all within the statutory period applicable to the last one." *Moskowitz v. Trustees of Purdue Univ.*, 5 F.3d 279, 281–82 (7th Cir. 1993). Blake's earlier EEOC charge shows that he was aware of the alleged discriminatory nature of the school district's refusal to employ him as a substitute as early as 2008. Therefore he is barred from bringing a cause of action (seven years later) based on the subject of that first EEOC charge. Blake cannot trace his claim all the way back to 2008. He is limited to the 2014 to 2015 school year, as alleged in his EEOC charge.

### B. Insufficient Evidence to Show Intentional Discrimination

In discrimination cases, the question at summary judgment is whether the plaintiff has produced sufficient evidence to support a jury verdict of intentional discrimination. *David v. Board of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). District 204 is entitled to summary judgment because Blake has failed to produce evidence creating a triable issue of fact under the relevant legal framework. Although Blake's complaint alleges both failure to hire and termination, the undisputed facts are that Blake has not been employed by District 204 since 2008 and was never a full-time employee. So this is only a failure-to-hire case. Moreover, while Blake's complaint encompasses race, sex, and age discrimination, he only responds to District 204's arguments about racial

7

discrimination and completely ignores District 204's arguments as to his sex or age discrimination claims, which means he has waived any responsive legal arguments. *See, e.g., Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010).

In a failure to hire case under the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must show that: (1) he was a member of a protected class, (2) he was qualified for an open position for which he applied, (3) his application for employment was rejected, and (4) the employer filled the position with someone not of his protected class, or left the position open. *Blise v. Antaramian*, 409 F.3d 861, 866 (7th Cir. 2005). Even if a plaintiff establishes these elements, he is not entitled to judgment if the employer articulates a legitimate, nondiscriminatory reason for its decision not to hire the plaintiff and if he cannot show that this reason was pretextual. *Id.* at 867.

In his response brief, Blake contends that he was allowed to substitute teach at District 204 until he had a conversation with Don Prola, a former driver's education teacher who retired from District 204 in June 2008. [24] ¶ 55. (At his deposition, Blake could not recall whether his conversation with Prola took place in 2008 or 2014. [24-1] at 37, 52.) Blake argues that Prola did not want Blake to work at the high school because Blake was black. Because Blake did not know Pagliaro, the assistant superintendent, Blake speculates that Prola passed "information" to Pagliaro (who then passed information to his successor, Hampton), thus preventing Blake from obtaining a substitute teacher position at District 204. Prola, however, never had authority to make employment decisions on behalf of District 204. [24]

8

¶ 57. District 204 does not dispute that Blake was a member of a protected class (black, male, over 40 years old) or that he was not hired as a substitute teacher after 2008. But District 204 contends that Blake cannot show that he was qualified for the substitute teacher positions, that the district did not hire others in his protected class, or that its nondiscriminatory reason for not hiring him was pretextual.

District 204 selected substitute teachers in the following order of preference: (1) certified teachers in the subject area for which the substitute was sought; (2) certified teachers; (3) individuals requested by a teacher or department chair; (4) all others. [24] ¶ 24. Other than the requirement that substitute teachers be on the county's authorized list, there is nothing in the evidentiary record about the preferred qualifications for the substitute teaching positions that Blake was not hired for (e.g., subject matter area). *See, e.g., Bennett v. Roberts*, 295 F.3d 687, 696 (7th Cir. 2002) (affirming summary judgment on teacher's discrimination claim where she failed to develop evidence on the qualifications for teaching positions). And during the 2014 to 2015 school year, District 204 also gave substitute teaching assignments to members of each of Blake's protected classes, including at least three individuals who fell into all three of his protected classes (black, male, and over 40 years of age). [24] ¶¶ 26, 28. Blake, then, is unable to show a genuine issue of material fact that he could establish a prima facie case of discrimination.

District 204 also has articulated a legitimate, nondiscriminatory reason for choosing not to assign Blake any substitute teacher positions: he was involved in a

9

physical altercation with high school students in 2007.[2] When a defendant provides nondiscriminatory reasons for its actions, "to avoid summary judgment, a plaintiff must produce evidence from which a rational trier of fact could infer that the defendant lied about its proffered reasons" or "that the reasons had no basis in fact." *Ghosh v. Indiana Dep't of Envtl. Mgmt.*, 192 F.3d 1087, 1091 (7th Cir. 1999). Even viewing the evidence in the light most favorable to Blake, there is no evidence in the record to show that District 204's explanation was a lie or completely lacking in factual basis. Instead, the undisputed record shows that Blake admits that he was involved in a "scuffle" with students (although he denies that he punched any of the students) and that a CPS investigation found credible evidence that Blake hit three high school students while serving as their teacher and coach. [24] ¶¶ 54, 51; [24-1] at 104. "[S]ummary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003). Other than his own speculation, Blake has presented no evidence from which to infer that the school district chose not to hire him because of his race, sex, or age and not because of his past physical altercation with CPS students.

Blake has not come forward with evidence that would support a judgment in his favor. Summary judgment for District 204 is warranted.

---

[2] For several years, the school district also had another reason for not hiring Blake—he was not on the county education office's list of authorized teachers from 2008 to 2011.

## IV. Conclusion

Defendant's motion for summary judgment, [22], is granted. Enter judgment and terminate civil case.

ENTER:

                                                              _____
                                                               Manish S. Shah
                                                               United States District Judge

Date: 4/10/2017